**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                                    Plaintiff,<br>v.<br>BRAYAN GUTIERREZ-DIAZ,<br>                                    Defendant. | Case No.: 17cr1649-MMA<br><br>**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**<br><br>[Doc. No. 18] |

Defendant Brayan Gutierrez-Diaz is charged in a single-count Information with possessing with intent to distribute 7.18 kilograms of a mixture and substance containing a detectable amount of heroin, in violation of Title 21, United States Code, section 841(a)(1). *See* Doc. No. 12. Defendant moves to suppress all evidence obtained as a result of the stop and search of his vehicle at the Highway 86 Border Patrol Checkpoint. *See* Doc. No. 18. The parties appeared before the Court for an evidentiary hearing on December 19, 2017. *See* Doc. No. 28. Thereafter, the Court permitted Defendant to file a supplemental brief and exhibits in support of his motion. *See* Doc. No. 37 [SEALED]. The government filed a response. *See* Doc. No. 40 [SEALED]. For the reasons set forth below, the Court **DENIES** Defendant's motion to suppress.

**BACKGROUND**

On May 25, 2017, at approximately 2:00 p.m., Defendant approached the pre-primary inspection area of the Highway 86 Border Patrol checkpoint near Westmorland, California. Border Patrol Agent Larry Orozco and his certified canine partner 'Louisza' were patrolling the pre-primary area. Defendant testified during the evidentiary hearing that he observed the agent and his canine walking around the passenger side and the of Defendant's vehicle. Defendant testified that Agent Orozco and Louisza did not walk around the driver's side of the vehicle. According to Agent Orozco, as Defendant approached the primary inspection booth, he and Louisza walked around to the driver's side of Defendant's vehicle, where Louisza "alerted to the bottom of the driver's side door seam." Doc. No. 32 at 26.[1] Agent Orozco relayed the canine alert to the primary inspection officer who referred Defendant to secondary inspection. In secondary inspection, Defendant consented to the search of his vehicle. Louisza again alerted to the driver's side door area. Agent Orozco removed the driver's side rocker panel on the vehicle, and removed six packages that tested positive for heroin.

Defendant was advised of his *Miranda* rights, signed a written waiver of his *Miranda* rights, and admitted to knowingly smuggling the narcotics. Defendant also signed a written consent form to search his cell phone, which uncovered additional incriminating evidence.

**DISCUSSION**

Defendant moves to suppress all evidence obtained as a result of the stop and search of his vehicle at the Highway 86 interior checkpoint, based on the violation of his Fourth Amendment right to be free from unreasonable searches and seizures. Defendant argues that the checkpoint is illegal, but even if it is not, the agents lacked probable cause to search Defendant's vehicle. Defendant contends that the Court must suppress all fruits

---

[1] Citations refer to the pagination assigned by the CM/ECF system.

of the illegal search and seizure. The government opposes the motion, arguing that the checkpoint serves the legal purpose of securing the border with Mexico and enforcing immigration laws. The government further argues that the referral to secondary inspection, and subsequent search of Defendant's vehicle, were lawful.

### 1. *Highway 86 Checkpoint*

Defendant argues that the government is using the Highway 86 checkpoint for the prohibited purpose of drug interdiction. Defendant challenges the constitutionality of the checkpoint, arguing that the government is using it for general law enforcement purposes, instead of immigration objectives.

The Fourth Amendment requires that searches and seizures be reasonable. *See* U.S. CONST. amend. IV. Generally, a search or seizure is unreasonable in the absence of individualized suspicion of wrongdoing. *Id*. While a vehicle stop at an immigration checkpoint is a "seizure," Border Patrol may stop or slow vehicles, and question occupants at a checkpoint for Fourth Amendment purposes. *See United States v. Martinez-Fuente*, 428 U.S. 543, 562 (1976). Permanent interior checkpoints, such as the Highway 86 checkpoint, are maintained at or near important roads leading away from the border and "operate on a coordinated basis designed to avoid circumvention by smugglers and others who transport the illegal aliens." *Id.* at 552. A vehicle may be stopped at a permanent immigration checkpoint for brief initial questioning, and then referred to a secondary inspection area for further questioning "in the absence of an individualized suspicion." *Id*. at 562. An officer has wide discretion in making referrals to secondary. *See id.* at 564.

Here, the evidence supports a finding that Border Patrol is permissibly operating the Highway 86 checkpoint for the primary purpose of immigration control. *See, e.g.,* Doc. No. 19-9 at 2. Presented with similar statistics and a similar record of the Border Patrol's operation of the checkpoint, other judges in this District have determined that the Highway 86 checkpoint is constitutional. *See, e.g., United States v. Summers*, 153 F. Supp. 3d 1261, 1266-67 (S.D. Cal. 2015) ("During the past three year period, there were

approximately 1,746 apprehensions at the checkpoint, including 1,579 immigration-related apprehensions and 167 drug-related apprehensions.").

Likewise, in this case it appears that the checkpoint was being operated for the primary purpose of enforcing immigration laws. Defendant has indicated that when he pulled up to the checkpoint, he was required to show his I-551 card and driver's license. *See* Doc. No. 18-1 at 2. The checkpoint was manned by Border Patrol agents; once narcotics were discovered secreted in Defendant's vehicle, DEA task force officers responded to the checkpoint in order to handle the matter. As such, the Court concludes that the Highway 86 checkpoint is lawfully operating for the special law enforcement purpose of enforcing immigration laws in the interior of the country.

*2. Vehicle Search*

Defendant argues that even if the Highway 86 checkpoint is legal, agents lacked probable cause to search his vehicle. Defendant contests whether Louisza alerted to his vehicle in the primary inspection area. Defendant contends that the canine could not have alerted to the driver's side of his vehicle, based on the agent and the canine's position on the passenger side of the vehicle.[2]

"The automobile exception permits police to search a vehicle as long as the vehicle is 'readily mobile' and 'probable cause exists to believe it contains contraband.'" *United States v. Davis*, 530 F.3d 1069, 1084 (9th Cir. 2008) (quoting *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (per curiam)). Agents have probable cause to conduct a warrantless search of a vehicle at secondary inspection if, in the totality of the

---

[2] Defendant argues in his supplemental briefing that the Court should draw an adverse inference against the government on this issue, based on the government's failure to retain the video recording of Defendant's movements when approaching the primary inspection booth. The Court declines to draw such an inference, particularly since the Court finds Agent Orozco's testimony credible and consistent with the reports of the investigation, as discussed *infra*. And although destruction of evidence may warrant suppression of secondary evidence in certain cases, this is not one of those cases. *See United States v. Loud Hawk*, 628 F.2d 1139, 1152 (9th Cir. 1979) (Kennedy, J., concurring), *overruled on other grounds by United States v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008).

circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). If a drug detection dog alerts for the presence of illegal narcotics, that alert provides probable cause to conduct a warrantless search pursuant to the automobile exception to the warrant requirement. *See United States v. Garcia*, 205 F.3d 1182, 1187 (9th Cir. 2000) (citing *United States v. Ross*, 456 U.S. 798, 807 (1982).

In this case, as discussed above, Defendant contends that the canine did not alert to his vehicle prior to his referral to the secondary inspection area. However, the Court does not find Defendant's testimony on this issue credible. Agent Orozco testified that Louisza alerted to the bottom of the driver's side door, which is consistent with the recitation of facts set forth in the Report of Investigation prepared by the assigned DEA task force officer and Agent Orozco's own report of the incident. The Court finds Agent Orozco's testimony credible.

Louisza alerted to the presence of narcotics in hidden compartments in the vehicle's driver's side rocker panels. The government has presented evidence demonstrating that Louisza was a certified, reliable narcotics detector dog, which Defendant does not dispute for purposes of the probable cause analysis. *See* Doc. No. 32 at 4. As such, Louisza's initial alert was sufficient to establish probable cause to search the vehicle.[3] *See Florida v. Harris*, 568 U.S. 237, 248 (2013); *Illinois v. Caballes*, 543 U.S. 405, 409 (2005) (holding that if a drug detecting dog is properly trained and that the traffic stop is not unlawfully prolonged, probable cause to justify a warrantless search is

---

[3] Even if the Court credits Defendant's version of events, agents legally searched the vehicle after obtaining Defendant's consent to do so. And as the government notes in its supplemental response, at an immigration checkpoint, probable cause is not required in order to divert a driver and his vehicle to secondary inspection. *See United States v. Barnett*, 935 F.2d 178, 182 (9th Cir. 1991) (holding that no articulable suspicion was required to refer the defendants to secondary inspection at a lawfully operating immigration checkpoint) (citing *United States v. Martinez-Fuerte*, 428 U.S. 543 (1975)).

5

established when the dog alerts on a part of the car); *United States v. Cedano-Arellano*, 332 F.3d 568, 573 (9th Cir. 2003).

## **CONCLUSION**

Based on the foregoing, the Court **DENIES** Defendant's motion to suppress.

**IT IS SO ORDERED**.

DATE: April 5, 2018

_____
HON. MICHAEL M. ANELLO
United States District Judge